Fowler vs. Great Southern Telephone and Telegraph Co.

No. 13,480.

JOSEPH J. FOWLER vs. THE GREAT SOUTHERN TELEPHONE & TELEGRAPH COMPANY.

SYLLABUS.

1. Plaintiff served in the capacity of general manager and secretary of defend ant corporation. A salary was fixed for him for the former position ; none for the latter. During the nine years he filled the positions he drew monthly his salary as general manager, but made no claim for compensation as secretary. Only after his retirement from the service of the company does he assert his right to a salary as secretary independent of that he was receiv- ing as general manager. *Held* : He cannot recover.

2. The measure of power vested in the board of directors of defendant company is determined by its charter and by-laws, and the board's action in excess thereof is not binding upon the corporation.

3. It is not found that plaintiff was ever employed specifically *by the year* as general manager. but if he were. there was no power in the board of directors to so employ him, since the by-laws distinctly declare that all officials shall hold office "during the pleasure of the board."

A PPEAL from the Civil District Court, Parish of Orleans—
  *Ellis, J.*

*Gustave V. Soniul* and *S. S. Jones* for Plaintiff, Appellant.

*Denegre, Blair & Denegre,* for Defendant, Appellee.

The opinion of the Court was delivered by

BLANCHARD, J.   The cause of action herein set forth is a claim for compensation growing out of plaintiff's incumbency of the positions of Secretary and General Manager of defendant corporation.

Stated, the account would read as follows:—

Nine years' salary as Secretary, from May, 1889, to May, 1898,
     at $300 per year.....:..............................$2,700 00
Eleven months' salary as General Manager, from April, 1897,
     to March, 1898, at $250 per month.................. 2,750 00
     Total amount claimed ...........................,...$5,450 00

From a judgment in his favor for $68.66, plaintiff prosecutes this appeal.

In this court defendant files answer, praying rejection of the demand *in toto.*

Plaintiff filled the positions of Secretary and General Manager of the company.   This is not disputed.

He claims that to the office of Secretary there was attached an annual salary of $300, to which he is entitled.

Defendant denies this, and avers that the Secretaryship as filled by plaintiff was not a salaried office, that no salary was ever agreed to be paid him as such, that he never demanded any during the nine years he filled the position, and that the claim therefor now made is an afterthought—taking shape only after his resignation from the company's service had been demanded and given.

Plaintiff claims that to the office of General Manager was attached an annual salary of $3,000.00; that his employment in that capacity was by the year; that he had filled the position for many years and was last elected thereto by the Board of Directors in March, 1897, for one year; and that his resignation having been called for one month later. amounting to a discharge without cause, he is entitled to the remaining eleven months' salary.

Defendant denies that he was or could be elected General Manager for any specified period, for the reason that the by-laws of the company expressly declare that persons chosen by the Board of Directors to

that office, and other offices of the company, shall hold their positions during the pleasure of the board.

## I.

With regard to the claim for salary as Secretary, it is not sustained.

The minutes of defendant company of May 11, 1886, show that Paul J. Marrs was elected Secretary and Treasurer, and that his salary as such was fixed at $25.00 per month.

The minutes of the following year (May 10, 1887) show that the salary of the Secretary and Treasurer was to be the "same as last year," and that Paul J. Marrs was again elected to fill those offices.

The following year (1888) Marrs was re-elected Secretary and Treasurer, but nothing was said about salary.

The next year (1889) a change in the offices was made. W. H. Boffinger was elected Vice President *and Treasurer;* Fowler (plaintiff) was elected General Manager *and Secretary;* and Paul J. Marrs was elected Assistant Secretary and his salary as such was fixed at "$50.00 per annum from this date." No mention was made of any salary for the secretary, or the treasurer, and no mention appears of any salary for these positions in any of the meetings of the Board of Directors from that date down to the present time.

Plaintiff continued to be elected each year to both positions—Secretary and General Manager; Paul J. Marrs to the position of Assistant Secretary; and Boffinger to those of Vice President and Treasurer.

We attach little or no importance to the circumstance that sometimes, at the meetings of the Board, plaintiff was elected Secretary and General Manager by one motion or vote which included both positions; at other times by separate motion or vote—one for each position.

This claim by plaintiff for salary as Secretary is based entirely upon the minutes of May 11, 1886, fixing the salary *of the Secretary and Treasurer,* Paul J. Marrs, at $25.00 per month, and the minutes of May 10, 1887, continuing that salary to Marrs for those positions for another year.

It is not asserted and is not the fact that any salary as Secretary was ever fixed for plaintiff individually, or mentioned in connection with the office at any of the elections whereat he was chosen to the position.

On the contrary, it is shown by the testimony of the President of the company that the main purpose of associating the office of Secretary

with that of the General Manager and electing Mr. Fowler to both was one of economy—to save the salary of $300.00 per annum which had theretofore been paid to Paul J. Marrs as Secretary and Treasurer.

After May, 1889, it appears that no compensation was ever voted to either the Secretary or the Treasurer.

It is also shown that in October, 1892, at the time Fowler's salary as General Manager was increased from $2,400 to $3,000 per annum, *all the services* he was then rendering were taken into consideration.

At no time after his election as Secretary in 1889, did Fowler ever lay claim to compensation for services rendered in that capacity.

He allowed nine years to elapse, during all of which time he drew monthly his salary as General Manager, but claimed nothing as Secretary.

He asserted no claim to such salary until his official connection with the company had been severed. He never communicated to the President of the company, nor to its Board of Directors, his understanding that he was to draw a salary as Secretary.

As General Manager he had supervision of all the pay rolls; his approval of all pay rolls and vouchers was required. None of the pay rolls or vouchers ever bore his name and salary as Secretary, though they bore the names and salaries of all other officers of the company, including his own as General Manager.

At one time, in consequence of illness, he asked permission of the President to over-draw his salary as General Manager. Yet at that very time, according to his present contention, he had to his credit and on deposit with the company a comfortable sum as salary as Secretary. He set up no claim in that period of pressing necessity, to this fund.

During his administration as General Manager, it was his duty from time to time to make reports to the Board of Directors of the general expenses of the New Orleans office, and of the net revenues derived therefrom. Yet he never once, in these reports, carried this claim for salary as Secretary as an outstanding liability of the company, nor took it into account in figuring the net revenues.

There are other circumstances tending to negative this claim, but the above is deemed sufficient.

## II.

With regard to the claim for eleven months' salary as general manager, it, too, stands insufficiently sustained, except as to seven days in May, 1897, for which the judge *a quo* allowed him.

The by-laws of the company were framed and adopted *by its stock-holders.*

After adoption by the stockholders they may be altered or amended at any annual meeting of the stockholders by a majority vote of those represented, or at any legal meeting duly called for that purpose. This is the declaration of the by-laws themselves.

There is no authority in the board of directors to adopt by-laws, nor to change, amend, or modify those adopted by the shareholders.

Furthermore, the measure of power vested in the board of directors is determined by the charter and by-laws, and the board's action in excess thereof is not binding upon the corporation. See Hunter vs. Sun Mutual Ins. Co., 26 La. Ann. 14; Douglass vs. Merchants' Ins. Co., 118 N. Y. 23.

The by-laws of the company were adopted June 8, 1883, prior to plaintiff's connection with it. Subsequent to that time, there were amendments adopted, but neither in the original by-laws, nor the amendments, was any authority given the board of directors to make contracts with the company's officials for employment by the year.

On the contrary, Article II of the by-laws, as adopted in 1883, has stood intact from that time, and that article, while vesting in the board authority to choose the officers of the company, prescribes that these officials shall hold office "during the pleasure of the board."

We do not find that plaintiff was ever employed specifically *by the year,* but if he were, there was no power in the board of directors to so employ him, and he knew it, for as secretary he was custodian of the archives, to-wit:—the charter, by-laws, minutes, etc.

The fact that he was chosen general manager at the recurring annual election of officers, and that the salary of the position was designated as so much *per year,* does not of itself sustain his contention that his was a yearly employment at a yearly salary.

It was not convenient to elect officers less often than once each year, and while the salary was specified at so much per year, in point of fact it was payable and drawn monthly, as usual in such cases.

Fowler's resignation, while dated April 28, 1897, appears not to have been accepted until May 7th. He was paid his salary up to and inclusive of the month of April. For the seven days in May, up to the date of the acceptance of his resignation, he is entitled to the salary, and the district judge so decreed. This was, we think, proper.

His contention that he rendered the company services after that date, for which he should be paid, is not sustained.

Neither is his contention that having resigned *conditionally*, and the acceptance of his resignation having been without the conditions attached, he is to be considered as not having resigned, and having reported for some time thereafter for duty, even though not recognized as still in the employ of the company, he is entitled to the salary during the time he so reported.

We do not regard his resignation as being a conditional one. He had not the right to attach conditions to it. He was not employed under contract for any period of time. His resignation could be called for at any time at the pleasure of the board of directors. Calling for his resignation was but, a courtesy extended him. It was in the power of the board to remove him from office at any time, and when they exercised that power, all he could claim in the way of salary was what would be due him up to the date of the acceptance of his resignation.

True,. in his letter of resignation there was this declaration:—"Reserving all my rights of interest and contracts connected therewith"— meaning with his employment as secretary and general manager. But these words are not to be construed as attaching "a condition" to his resignation. If he had any contract interests or rights he could, of course, reserve them and did. But we have not found that he had such rights· to reserve.

He stated also in his letter of resignation that it was "understood and so stated by Mr. Caldwell (representing Mr. Barton and others) that my services have been satisfactory, and entitled to recognition substantially."

The "Mr. Caldwell" and the "Mr. Barton" referred to were directors of the company, and Mr. Caldwell, it seems, was the one who was deputed to ask his resignation.

It is quite true that in the conversation had between Caldwell and the plaintiff, which resulted in the resignation of the latter, the former told him that, appreciating the readiness with which he had consented to send in his resignation, and considering his long connection with the company, the board would be glad to show him some substantial acknowledgment of his services, etc.

We do not think that from these words of Director Caldwell any legal liability .on part of the company to the plaintiff resulted.

Fowler claims that more than this was said by Caldwell to him at ·that interview, but on this the preponderance of evidence is against him.

It appears that later, the company, through its attorneys, did offer him, upon his retirement, a sum equal to three months' salary. This may have been, from the company's standpoint, the tender of a "substantial recognition."

Fowler declined it, preferring to sue for the eleven months' salary he claimed to be due him as general manager, and the nine years' salary he claimed as secretary.

Judgment affirmed.